UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS O. JACKSON #282320,

        Plaintiff,

vs.

L. PAUL BAILEY, STACEY WARD, COREY
BURKS, JUAN MATA, and BERRIEN
COUNTY,

    Defendants.

File No. 1:08-cv-996
HON. Robert J. Jonker
**Magistrate Judge Hugh W. Brenneman, Jr.**

---

Curtis O. Jackson #282320
*In Pro Per*
Marquette Branch Prison
1960 US Highway 41 South
Marquette MI 49855

James M. Straub (P21083)
Attorney for Defendant
Straub Seaman & Allen, P.C.
1014 Main Street
St. Joseph, MI 49085
269-982-1600

Donna B. Howard (P57635)
Co-Counsel for Defendant
Berrien County Administration Center
701 Main Street
St. Joseph, MI 49085
269-983-7111

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 12(b)(6), (c), and/or 56(a)**

---

**STRAUB, SEAMAN & ALLEN, P.C.**

1014 MAIN ST., ST. JOSEPH, MI 49085   269.982.1600
4466 HERITAGE COURT, SUITE B, GRANDVILLE, MI 49418   616.530.6555

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 12(b)(6), (c), and/or 56(a)**

## SUMMARY OF ARGUMENT

Plaintiff has filed a complaint against the Sheriff L. Paul Bailey, Berrien County, and County Deputies Mata, Ward and Burke, alleging he was injured during two assaults and a corresponding denial of medical care while incarcerated at the Berrien County Jail. Defendants file this motion for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6), (c), and 56(a).  Defendants submit that Plaintiff was not assaulted, nor was he denied medical treatment.  Without waiving the wholesale denial of Plaintiff's factual allegations, Defendants submit this motion for summary judgment on the basis that insofar as Plaintiff's complaint can be construed to raise issues under the Eighth Amendment, analogous claims under the Fourteenth Amendment, or any state law claims, Plaintiff's claims fail as a matter of law.  Moreover, because Plaintiff failed to exhaust his administrative remedies, summary judgment is appropriate.

## FACTS

Plaintiff has filed a lawsuit against Berrien County, and duplicatively Sheriff L. Paul Bailey, and several county deputies after two alleged "assaults" he purportedly received from other inmates while in custody.  Plaintiff alleges that the first assault occurred on March 29, 2008, by an inmate while he was in a holding cell during a security search of the Plaintiff's dormitory.  *See Plaintiff's Complaint at p. 4, ¶1.*  Plaintiff's complaint further alleges that he had been placed in handcuffs while the other inmates were unrestrained. *Id.*  Plaintiff states that he had pre-warned Deputy Stacey Ward of the risk that another

inmate would harm him, but Deputy Ward called him a "coward" and ignored the warning allegedly because "of the strong dislike she had towards plaintiff being a burden on the County jail and a state prisoner designated as a high risk[.]" *Id.*

Plaintiff claims that he filed a grievance regarding this incident the following day with Berrien County Sheriff Bailey, and that Sheriff Bailey failed to properly acknowledge the grievance. *See Plaintiff's Complaint at p. 5, ¶2.* Plaintiff alleges that he subsequently filed an additional three grievances between April 1, 2008, and April 13, 2008, and orally complained to Sergeant Corey Burks. *Id.*

On June 1, 2008, Plaintiff alleges that he was assaulted a second time while confined in a holding cell with four other inmates during a cell search. *See Plaintiff's Complaint at p. 6 (continued attachment), ¶3.* Plaintiff alleges that, like the March 29, 2008 incident, he was the only inmate in handcuffs at the time of the assault, that he had pre-warned Deputy Juan Mata of the risk of harm from other inmates, and that he requested that he be segregated during the cell search. *Id.* Again, Plaintiff alleges that his warnings went unheeded, and that Deputy Mata responded to Plaintiff's concerns by suggesting that he "shouldn't run his mouth so much[.]" *Id.* Thereafter, Plaintiff alleges that he notified Sergeant Burks and Sheriff Bailey of the assault, but no action was taken. *Id.*

Lastly, Plaintiff alleges that after being assaulted by other inmates, he requested and was denied medical care for his injuries for two and a half weeks, which resulted in an exacerbation of his injuries due to infection and failure to heal. *See Plaintiff's Complaint at p. 6, ¶¶ 4, 5.* Plaintiff goes on to allege that the medical care at the Berrien County Prison was generally inadequate. *See Plaintiff's Complaint at p. 7, ¶¶ 6, 7, 8.*

The records maintained in the normal course of the operation of the Berrien County Jail demonstrate that there was no cell ("shakedown") search of Plaintiff's dormitory on March 29, 2008.  (**Exhibit A**).[1]  Plaintiff did receive disciplinary action for issues unrelated to assault on that date, a record of which was created and kept in Plaintiff's custodial file.  *Id.*  A security search of Plaintiff's dormitory was conducted on March 30, 2008, and, again, a record of the search was created after the search revealed a torn bed sheet.  What did happen on March 29, 2008 was that a female nurse received a grossly inappropriate letter authored by Plaintiff for which he received disciplinary penalty.  *Id.*  Noticeably absent from the routinely maintained records is any reference to an assault occurring during any cell search.

Plaintiff further alleges that he was assaulted a second time, again during a cell search, on June 1, 2008.  Plaintiff identifies Deputy Juan Mata as being present during this search.  Berrien County employee attendance records show that Deputy Mata was not involved in a cell search on that date.  (**Exhibit B**).

Although Plaintiff alleges he was injured in the purported assaults, his medical records kept by the Berrien County Jail demonstrate that he was, in fact, receiving regular medical treatments for depression, constipation, eczema, and other skin rashes during his incarceration at the Berrien County Jail.  However, those records contain no evidence of any trauma-related complaints or treatments.  (**Exhibit C**).

---

[1] Plaintiff's dormitory on this date was 1L as established by the Disciplinary entries of March 29 and March 30.  The disciplinary note of March 30 reflects a search resulting in the discovery of a torn sheet and the "Shakedown Roster" reflects that a search was carried out on March 26 in area 1L A copy of the grossly inappropriate note addressed to Nurse Witte is attached to the March 30 disciplinary note.  Plaintiff wrote similar notes to other health care personnel, particularly to jail psychologist Lynn Leggett.

Plaintiff's complaint contains factually unsupportable and wildly conclusive allegations:  that Berrien County prison officials acted with malicious, evil, and cruel states of mind toward Plaintiff, *see Plaintiff's Complaint at p. 4, ¶1* ; that he was treated disparately from other inmates in that he was the only inmate handcuffed during cell searches, *id.*; that county personnel failed to take reasonable steps to protect Plaintiff from a known and identifiable harm, *see Plaintiff's Complaint at p. 5, ¶2*; that the failure to take reasonable steps to protect his safety is an unlawful and willful disregard of Plaintiff's safety, *id.*; that proper medical treatment following the alleged assaults was withheld, which exacerbated his injuries and resulted in permanent damage, *see Plaintiff's Complaint at p. 6, ¶¶ 4, 5*; that medical care at the prison was generally inadequate, *see Plaintiff's Complaint at p. 6, ¶ 5*; and that the prison policy of restraining high-risk prisoners and placing them in common cells with unrestrained inmates without regard to the risk of assault is unsafe and unconstitutional, *see Plaintiff's Complaint at p. 7, ¶9*.

Defendants, in their responsive pleadings, deny all of Plaintiff's unsupported allegations.  Defendants move for summary judgment pursuant to Fed. R. Civ. Pro. 12(b)(6), (c), and 56(a).

## STANDARD OF REVIEW

Dismissal is appropriate under the Federal Rules of Civil Procedure 12(b)(6) where a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). That is, dismissal is proper where a plaintiff cannot establish any set of facts that would entitle him to the relief sought. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99 (1957).  In a ruling on a Rule 12(b)(6) motion, a court must construe the complaint liberally in the plaintiff's

favor and accept as true all factual allegations and permissible inferences therein, but the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir.2009) (quoting *Jones v. City of Cincinnati,* 521 F.3d 555, 559 (6th Cir.2008)); *Westlake v. Lucas,* 537 F.3d 857, 858 (6th Cir.1976).

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a plaintiff must plead "sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009)(*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a "'probability requirement,'" but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When a court is presented with a Fed.R.Civ.P. 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association,* 528 F.3d 426, 430 (6th Cir.2008).

The standard of review for a Fed.R.Civ.P. 12(c) motion is the same as for a motion under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511-12 (6th Cir.2001)( citing *Mixon v. Ohio,* 193 F.3d 389, 399-400 (6th Cir.1999)).  Thus, a motion under Fed.R.Civ.P. 12(c)

requires that "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 722 (6th Cir.2010)(citing *JP Morgan Chase Bank v. Winget,* 510 F.3d 577, 581 (6th Cir.2007))(internal citations and quotation marks omitted).

As with a 12(b)(6) motion, it is well understood that only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. Fed.R.Civ.P. 8(a)(2).  As such, it is necessary that the pleader give just enough factual allegations to give fair notice to the defendant of the claim and the grounds upon which it rests. *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197 (2007).  However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz,* 592 F.3d at 722 (quoting *Ashcroft,* 129 S.Ct. at 1949-50; *Twombly,* 550 U.S. at 555).  In *Twombly*, the Supreme Court stated, "a plaintiff's obligation to provide the 'grounds' of 'his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id.* at 1964-65 (internal citations omitted).  In *Ashcroft*, the Supreme Court, likewise explained that:

> [d]etermining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

> complaint has alleged – but it has not "show[n]" - that the pleader
> is entitled to relief.

*Ashcroft,* 129 S.Ct. at 1949 (internal citations omitted).

In reviewing the Complaint in this case, Defendants contend that even if all the well-pled allegations of material facts are taken as true, Plaintiff has not shown that there is more than a speculative possibility of misconduct by Defendants, nor that Plaintiff is entitled to relief.

Further, a court may grant summary judgment where there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[2]  The moving party can meet its initial burden of demonstrating the absence of a genuine dispute of material fact by informing the court of the basis for its motion, and identifying those portions of the pleadings, affidavits, and other evidence on file that it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).  Once the initial burden is met, the non-moving party cannot rest on its pleadings, but must present specific probative evidence in support of its claim or defense, that a genuine issue of material fact exists.  *Bill Call Ford, Inc. v Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S.Ct. 2505 (1986).  Importantly, a mere scintilla of evidence is insufficient.  Rather, in order to avoid summary judgment, the non-movant must provide "evidence on which the jury could reasonably find for the [non-movant]."

---

[2] Defendants are mindful of the recent amendments to Fed. R. Civ. P. 56, but note that the summary of the amendments specify that the amendment "carries forward the summary-judgment standard expressed in former subdivision (c)[.]" For that reason, we believe the case law expressing the standard of review for former Fed. Civ. P. 56(c) applies to the new language at Fed. R. Civ. P. 56(a).

*Anderson*, 477 U.S. at 252; *see also Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

## LAW AND ARGUMENT

### *i. Plaintiff's failure to set forth claims with sufficient clarity*

To the extent that Plaintiff's complaint fails to set forth his claims with sufficient clarity that the defendants are apprised of the claims against them, defendants are entitled to summary judgment.  Defendants do not waive any arguments under Fed. R. Civ. Pro. 8(a)(2) that a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  However, should this court construe Plaintiff's allegations, Defendants note that Plaintiff's complaint must be viewed in the context of conditions of confinement, which limits his claims to those pursuant to 42 U.S.C. § 1983 for violations of his Fourteenth Amendment rights, which are analogous to a prisoner's Eighth Amendment right to be free from cruel and unusual punishment, either as it relates to the use of excessive force or deliberate indifference to serious medial needs. *See County of Sacramento v Lewis*, 523 U.S. 833, 849-50, 118 S.Ct. 1708 (1998); *Bell v Wolfish*, 441 U.S. 520, 535, n 16, 99 S.Ct. 1861 (1979); *Miller v Calhoun County*, 408 F.3d 803, 812 (6th Cir 2009).  Defendants aver that Plaintiff's claims are so conclusory and so removed from the reality established by the Berrien County Jail records that they are of insufficient clarity to warrant further assessment by this court.

Based on the foregoing, Defendants are entitled to summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and 56(a).

*ii. Eighth Amendment claims for cruel and unusual*

*punishment stemming from assault by other inmates*

A prison official may be liable under the Eighth Amendment for deliberate indifference to an inmate's health and safety if the official knows that the inmate faces a substantial risk of harm and disregards that risk by failing to take reasonable steps to protect the inmate from that risk. *Farmer v. Brennan*, 511 U.S. 825, 825; 114 S. Ct. 1970 (1994). Thus, claims regarding inadequate or unconstitutional conditions of confinement are considered under the Eighth Amendment, *Helling v. McKinney*, 509 U.S. 25, 36, 113 S.Ct. 2475 (1993), which has been interpreted to include a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer,* 511 U.S. at 833 (quoting *Cortes-Quinones v. Jiminez-Nettleship*, 842 F.2d 556, 558 (1st Cir 1977)); *see also Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321 (1991).

Courts have developed a two-step test to determine whether a custodial official has violated the Eighth Amendment.  First, the deprivation must be objectively "sufficiently serious," which requires a showing that the conditions of confinement posed a "substantial risk of serious harm." *Farmer,* 511 U.S. at 834.  Second, the prison official must have had a culpable state of mind, demonstrating a "deliberate indifference" to the inmates health or safety.  *Id.*  A prison official demonstrates a "deliberate indifference," if the official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff cannot satisfy this two-step test.  Aside from Plaintiff's conclusory

---

**STRAUB, SEAMAN & ALLEN, P.C.**

allegations, there is simply no evidence that either purported assault ever took place. Berrien County records irrefutably establish that no cell search was conducted on March 29, 2008, as Plaintiff alleges.  (**Exhibit A**).  And despite several records referencing Plaintiff, which were created on March 30, 2008, the date that a cell search was conducted, none of those records nor Plaintiff's medical records reference any assault or injury to Plaintiff.  *Id.*  Plaintiff's allegations that Defendant Deputy Ward was pre-warned of the potential for assault, ignored it, and went on to call Plaintiff a "coward," are unbelievable in the absence of any facts to corroborate Plaintiff's allegations.  *Id.*

A review of Plaintiff's medical records around the time of the first alleged assault conclusively eliminates the veracity of Plaintiff's allegations.  Just days after the alleged assault, Plaintiff was treated by the Defendant County's psychiatrist, Lynn Leggett.  Ms. Leggett's records of her April 2, 2008 interview with Plaintiff contain no mention of an assault or other injury.  (**Exhibit D**).  The very next day, April 3, 2008, Plaintiff received medical treatment for constipation and blood pressure complaints, but the records include no mention of an assault or assault-related injuries.  (**Exhibit C**).  On April 8, 2008, Plaintiff declined sick call.  *Id.*  Plaintiff received medical care on April 10, 2008, and May 12, 2008, again with no mention of an assault or trauma.  *Id.*  On May 16, 2008, Plaintiff requested medication to help him sleep, but never mentioned an assault or other injury. (**Exhibit E**).  On May 19, 2008, Plaintiff was given medical care, again with no complaint of assault or other injury.  (**Exhibit C**). Beginning on May 27, 2008, Plaintiff began having his blood pressure monitored.  *Id.*

On the date of the second alleged assault, June 1, 2008, Plaintiff alleges that Deputy

Mata was pre-warned of the potential of assault, ignored the warning, and suggested that Plaintiff should not "run his mouth so much."  Again, Plaintiff's factual allegations fail to comport with the record evidence.  Deputy Mata did not work on June 1, 2008.  (**Exhibit F**).  Further, on the same date, Plaintiff had a prescription refill, but there is no other record concerning Plaintiff's medical condition.  (**Exhibit C**).  While Plaintiff has attached to his complaint two documents purporting to be written that same day detailing the assault and resulting injuries, these documents were never provided to Berrien County and do not appear in any records.[3]  (**Exhibit G**).

Again, Plaintiff's medical records from this time are silent on the subject of assault. On June 12, 2008, Plaintiff was seen for medical care, and again, there is no mention of assault or other corresponding injuries.  (**Exhibit C**).  Importantly, there are no records evidencing that Plaintiff made any requests for medical attention stemming from an assault during this period.  *Id.*

Even assuming that the alleged assault actually took place, Plaintiff must show (1) that the conditions were objectively "sufficiently serious;" and (2) that prison officials were "deliberately indifferent" to Plaintiff's safety.  *Farmer*, 511 U.S. at 834, 837.  This requires a showing that the defendant-officers were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that an official also drew the inference.  *Id.* at 837.  Plaintiff was classified as a high-risk prisoner with a history of

---

[3] During Plaintiff's incarceration at the Berrien County Jail, he filed several grievances, including complaints regarding his classification as a high-risk inmate, having his bed sheet removed when it was found torn in his cell (Plaintiff was considered an escape risk), and being fed his meals on paper plates.  These grievances appear in the Berrien County Jail records.  Curiously, it is only the alleged grievances related to the purported assaults forming the basis of this complaint that do not appear in the incarceration records.

assaultive and violent behavior.  (**Exhibit H**).  Thus, as a safety precaution for the benefit of all inmates and jail officials, Berrien County would have placed Plaintiff in handcuffs when removing him from his cell.  *Id.*; (**Exhibit I**).  Again, assuming for purposes of this motion that Plaintiff's allegations are true, an argument that the guards should have perceived a substantial risk of serious harm from the circumstances is circuitous logic.  Putting high-risk inmates in restraints when out of their cell is a well recognized safety precaution for other inmates and correctional officers; it would be illogical for the officers carrying out a safety precaution to consider it a safety risk.

Additionally, Plaintiff must demonstrate that the prison officials had a "subjective" indifference to his health or safety.  *Id.*  Plaintiff has attempted to make out such an allegation by claiming that he pre-warned Deputies Ward and Mata, and that he orally complained to Sergeant Corey Burks.  But neither Deputies Ward, nor Mata were even present during cell searches on the dates Plaintiff identifies such that they could have exhibited "subjective" indifference to his health or safety.  Under the circumstances, there is no reason to conclude that any prison official would have been subjectively indifferent to Plaintiff's health or safety.

Based on the foregoing, Defendants are entitled to summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and 56(a).

### iii. Eighth Amendment claims for cruel and unusual punishment stemming from failure to provide medical care

The Eighth Amendment requires the government to provide medical care for inmates because failing to do so "may actually produce physical torture or a lingering

death" or in less serious cases "result in pain and suffering which no one suggests would serve any penological purpose." *Harrison v. Ash*, 539 F.2d 510, 517 (6th Cir. 2008) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285 (1976)). To qualify under the Eighth Amendment, the medical condition must be "sufficiently serious." *See Harrison*, 539 F.2d at 518; *see also Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison,* 539 F.2d at 518. To demonstrate deliberate indifference, the inmate must show that the official was "aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Harrison,* 539 F.2d at 519. Thus, the test contains both an objective and a subjective requirement. Even where an inmate can demonstrate that the official knew of the substantial risk to health or safety, the official may be "free from liability if they reasonably respond to the risk, even if the harm ultimately was not averted." *Id.* (quoting *Farmer,* 511 U.S. at 844).

Proof of the objective seriousness of a need for medical treatment is necessary, because it is only the deprivations that offend the social conscious and implicate the Eighth Amendment. *See Jennings v. Al-Dabaugh*, 275 F. Supp. 2d 863, 868 (E.D. Mich. 2003). As the Supreme Court explained in *Hudson v. McMillen*, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992), the objective component of an Eighth Amendment claim is, therefore, contextual and responsive to "contemporary standards of decency." *Estelle,* 429 U.S. at 103.

Society does not expect that prisoners will have unqualified access to health care,

and the deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious. *Estelle*, 429 U.S. at 103-04. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Comstock v. McCrary*, 273 F.3d 639, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 838).

The conduct for which liability attaches must be more culpable than negligence; it must demonstrate deliberateness tantamount to intent to punish. *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)(citing *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988)). Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs is essential for a finding of deliberate indifference. *Horn*, 22 F.3d at 660. That a prisoner disagrees with the course of treatment that was prescribed, or even that the treatment that was received was negligently administered, does not rise to a constitutional violations. *Estelle*, 429 U.S. at 105-06.

Thus, the test to determine whether the failure to provide medical care amounts to cruel and unusual punishment requires two elements: (1) that a serious medical condition exists and (2) that the prison official acted with deliberate indifference to that condition in denying medical care. Plaintiff cannot meet the first element – that a serious medical condition existed. A prisoner who claims that a delay in medical attention amounted to an Eighth Amendment violation "must place verifying medical evidence in the record to establish the detrimental effect of the delay." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

Aside from Plaintiff's mere allegations and grievances not filed, there is no evidence

that would establish that Plaintiff was in need of medical care, that Plaintiff requested medical care, or that Plaintiff suffered any traumatic injuries necessitating medical care.  In fact, the medical records indicate that Plaintiff was receiving regular treatments for high-blood pressure, constipation, eczema, and depression without ever mentioning an assault or resulting injuries.  (**Exhibit C**).  More importantly, the health care professionals providing him with medical attention made no note that Plaintiff had any physical injuries.  *Id.* Because there is an utter absence of any documentation that Plaintiff suffered any injury, he certainly cannot establish that he suffered from a serious medical condition.

Additionally, Plaintiff cannot establish that Berrien County was deliberately indifferent to a serious medical condition in denying Plaintiff care.  Plaintiff was being treated for medical conditions during and around the times of the two alleged assaults. Thus, he was not being denied medical care–he was being treated.  Plaintiff's problem is that even if it were true that he was assaulted and suffered some injury, he can establish neither that it was a serious medical condition, nor that anyone even knew about it such that they indifferently denied his treatment.  (**Exhibit C**).  On this issue, Defendants are entitled to summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and 56(a).

To the extent that Plaintiff has alleged that the medical care he received at the Berrien County Jail was generally deficient and inadequate, again, the records do not support this allegation.  Plaintiff has attempted to establish that Berrien County made him wait weeks before responding to a medical request, that the care he was given was unprofessional, and that he was denied prescription medications.  Even if it were true that the medical care Plaintiff received was unprofessional, medical malpractice does not

amount to a constitutional violation.  *Estelle v Gamble*, 429 U.S. 97, 106; 97 S.Ct. 285 (1976).  More importantly, Plaintiff was on sick call twelve times during his five month incarceration at the Berrien County Jail.  See **Exhibit C**.  Furthermore, Plaintiff began receiving prescription medications on March 14, 2008, the day after his booking.  *Id.*  And with the exception of the period between April 16, 2008, to May 8, 2008, during which time Plaintiff was transferred to a different facility, Plaintiff was given prescription medications on a daily basis.  *Id.*  In fact, Plaintiff's prescriptions were reviewed regularly, and his prescriptions changed several times during his incarceration.  *Id.*

In the face of the irrefutable facts, summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and (c) is appropriate.

### iv. Issues involving the qualified immunity and suing in the personal vs. official capacity

Plaintiff has sued Sheriff L. Paul Bailey[4], Deputy Stacey Ward, Sergeant Corey Burks, and Deputy Juan Mata in their personal capacities.  Qualified immunity shields government officials performing discretionary functions from civil damages when their actions could reasonably have been thought consistent with the rights they are alleged to have violated.  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  The United States

---

[4] Any claims that could be construed as being against Sheriff Bailey in his official capacity are unsustainable under the rule announced in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), which held that municipal liability must have a direct causal connection between the policies or customs of the municipal actor and the constitutional injury to the plaintiff.  This requires a plaintiff to "'identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993), *quoting, Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *cert. denied*, U.S., 114 S. Ct. 1219, 127 L.Ed.2d 565 (1994).   Further, respondeat superior or vicarious liability does not attach under § 1983.  *Id.* at 385.

Supreme Court has adopted a two-part test to determine whether an officer-defendant should be granted qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, the court must consider whether the facts, viewed in a light most favorable to the Plaintiff, "show the officer's conduct violated a constitutional right." *Id.* at 201. If yes, then the court must go on to decide "whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted." *Id.* at 202. A claim against a public official avoids this immunity only if the right alleged to have been violated was "clearly established" in a particularized sense of the complained of conduct, and the contours of the right must be sufficiently clear that a reasonable officer would have understood what he was doing violated the right. *Vine v. County of Ingham*, 884 F. Supp. 1153 (1995)(citing *Anderson,* 483 U.S. at 640).

Again, assuming for purposes of this motion only that the assaults took place, Plaintiff's allegations cannot pass the first hurdle because there is nothing unconstitutional about the collective officers' actions. For purposes of safety, Berrien County places high-risk inmates in restraints when removed from their cell to ensure the safety of the officials, as well as the safety of the other inmates. (**Exhibit I**). The use of restraints in situations where a high-risk inmate may pose a threat of harm to other individuals is specifically contemplated by our laws, and is not unconstitutional. *See e.g. Youngberg v. Romeo*, 457 U.S. 307, 102 S. Ct. 2452 (1982) (noting that no constitutional rights had not been violated when hospital workers used bed restraints on an inmate while in the infirmary because a hospital has a duty to "protect its residents"); *Rhodes v. Chapman*, 452 U.S. 337, 101 S. Ct.

2392 (1981)(finding that physical restraints are constitutionally permissible where there is a penological justification for their use).[5]  Thus, Plaintiff has not demonstrated a clearly identified constitutional right.

Even if the use of restraints here violated a clearly established constitutional right, the evidence does not support any inference that the officers involved would view their own conduct as unlawful.  As noted above, Plaintiff was a high-risk prisoner with a history of assaultive and violent behavior, which necessitated certain safety precautions for the benefit of all inmates and officials.  (**Exhibits H** and **I**).  The safety precaution was to place Plaintiff in handcuff during cell searches.  (**Exhibit I**).  Because the officials were following this prescribed safety procedure, it is unlikely and illogical to say that they would have recognized their own conduct as unlawful.  Further, as the officials were following a defined procedure for high-risk prisoners, the defendants were not using discretion.  Thus, the defendants are entitled to qualified immunity.

Because the officers are entitled to qualified immunity, the claims against all of the Defendants must be dismissed.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571 (1986); *Bowman v. Corrections Corporation of America*, 350 F.3d 537, 545 (6th Cir. 2003); *Hannock v. Dodson*, 958 F.2d 1367, 1376 (6th Cir. 1992).  Summary judgment pursuant to Fed.R.Civ.P 12(c) and 56(a), is appropriate.

---

[5] Defendants do not read Plaintiff's complaint as making a claim of excessive force based on being placed in physical restraints for an excessive period of time after an otherwise justifiable security threat ceases to exist.  However, to the extent that this Court may determine that such a claim is made, Defendants would note that merely being placed in restraints does not "support a reliable inference of wantonness in the infliction of pain . . . ." *Whitley v. Albers*, 475 U.S. 312, 322, 106 S. Ct. 1078 (1986).

*v. State law issues involving governmental immunity*

*and gross negligence*

Government officers and employees acting within the scope of their authority are generally immune from tort liability, provided their actions are not grossly negligent. *Maiden v. Rozwood*, 461 Mich. 109, 121-22, 597 N.W.2d 817 (1999). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." M.C.L. 691.1407(2)(c). "Evidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden*, 461 Mich. at 122-23. Plaintiffs must come forward with "proof of conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. To hold otherwise would create a jury question premised on something less than the statutory standard." *Id.* at 123.

Plaintiff has not alleged, nor do the facts support, gross negligence. Courts have held that the gross negligence standard suggests "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Tarlea v. Crabtree*, 263 Mich. App. 80, 90; 687 N.W.2d 333 (2004). Because the gross negligence standard specifically mentions a failure to follow a safety precaution, it is unlikely that courts would hold that following a safety precaution would amount to gross negligence. Thus, even assuming that Berrien County officials placed Plaintiff in handcuff during cell searches, such action falls far short of the egregious conduct characterized by a substantial lack of concern, recklessness, and a willful disregard for safety that would support Plaintiff's cause of action. See *Tarlea*, 263 Mich. App. 80.

Moreover, Plaintiff cannot establish that the defendants actions were the proximate

cause of his damages. The Governmental Immunity Act provides that government officials are immune from tort liability if "the . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage." M.C.L. 691.1407(2)(c). Interpreting that language, the Court in *Robinson v. City of Detroit*, 462 Mich. 439, 613 N.W.2d 307(2000), reasoned that "[t]he Legislature's use of the definite article 'the' clearly evinces an intent to focus on one cause." *Id.* at 458-59. Thus, "'the proximate cause' is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury." *Id.* at 459. In *Robinson*, a case where the plaintiffs were passengers riding in a stolen vehicle involved in a police chase, the Court determined that the tort immunity statute applied because the proximate cause of the plaintiffs' injuries was the reckless conduct of the driver of the stolen vehicle, not the conduct of the pursuing officers.[6]

Similar to the officers in *Robinson*, and assuming for purposes of argument that Plaintiff's allegations are true, the Defendants herein were simply performing the proper functions of their jobs, including accounting for the dangers associated with Plaintiff's high-risk classification. The proximate cause of Plaintiff's alleged injuries is the assault by his fellow inmates. Thus, consistent with Michigan law, the Berrien County officials' actions were not grossly negligent, nor were they the proximate cause of Plaintiff's alleged injuries. Summary judgment pursuant to Fed.R.Civ.P 12(c) and 56(a), is appropriate.

---

[6] *See also Scott v. Charter Township of Clinton*, No. 233266, 2002 W.L. 31160298 (Mich. App. 2002)(finding that correctional facility officers were immune from liability where the decedent inmate hanged himself with a drawstring on the basis that the proximate cause of his death was his decision to commit suicide).

---

**STRAUB, SEAMAN & ALLEN, P.C.**

1014 Main St., St. Joseph, MI 49085 269.982.1600
4466 Heritage Court, Suite B, Grandville, MI 49418 616.530.6555

*vi. Plaintiff's action is barred for failure to exhaust his*

*administrative remedies prior to filing suit*

The Prisoner Litigation Reform Act states that an inmate who wishes to bring an action with respect to conditions of confinement under 42 U.S.C. § 1983 must first exhaust all available administrative remedies prior to bringing a lawsuit. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002)(noting that the Prisoner Litigation Reform Act applies to all claims whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong); *see also Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819 (2001).

There is a grievance process in place at the Berrien County Jail.  The Inmate Rules & Regulations provide a broad opportunity for complaints by its inmates or detainees to "be addressed by writing the jail operations lieutenant, jail administrator, undersheriff, or sheriff." (**Exhibit J**), *IR&R, Section 12, p. 2.*  While Plaintiff attached three purported grievances to his Complaint, these three documents were never received by the Berrien County Jail, nor do they appear in any records kept in the regular course of business by the Berrien County Jail.  (**Exhibit G**).  Assuming for purposes of argument that Plaintiff did file the three grievances, but received no response, he could have followed up with any other official identified in the Inmate Rules & Regulations.  Instead, Plaintiff made absolutely no mention of the grievances until he attached the purported copies to his complaint.[7]  A plaintiff who alleges that he filed a grievance and received no response, but took no further

---

[7] Curiously, Plaintiff was somehow able to obtain a copy of the grievances, despite the fact that they are not in the Berrien County Jail records.  Plaintiff gives no explanation as to how he obtained these copies.

action with regard to those grievances has not exhausted his administrative remedies.  *See*

*Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)(citing *Wright v. Morris*, 111 F.3d

414, 417 n. 3 (6th Cir. 1997)(finding that an inmate who claims that he filed a grievance

on which the municipality took no action has not exhausted his administrative remedies

because that inmate could have re-filed the grievances or provided receipts for the

grievances filed such that he could continue with an appeal).

Consequently, given Plaintiff's undeniable failure to exhaust his administrative

remedies prior to filing suit, Plaintiff's action must be dismissed pursuant to 42 U.S.C. §

1997e and Fed. R. Civ. P. 12(b)(6) or 56(a).

<u>CONCLUSION</u>

WHEREFORE, Defendants Berrien Sheriff L. Paul Bailey Sergeant Corey Burks,

Deputy Stacey Ward, Deputy Juan Mata, and Berrien County respectfully request this

Honorable Court to enter its Order granting summary judgment in their favor and against

Plaintiff on all claims of Plaintiff's Complaint against them, and further to grant any such

additional relief as this Court may deem just and proper under the circumstances.

Respectfully submitted,

Dated: <u>February 9, 2011</u>            STRAUB, SEAMAN & ALLEN, P.C.


*//s// James M. Straub*
James M. Straub (P21083)
Attorney for Defendants
1014 Main Street, P.O.Box 318
St. Joseph, MI 49085
269-982-1600

---