UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS JACKSON,

    Plaintiff,

v.                                                                           Case No. 1:08-cv-996
                                                                           Hon. Robert J. Jonker

STACEY WARD, *et al.*,

    Defendants.

                                         /

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Stacey Ward, Juan Mata and Berrien County (docket no. 333).[1]

### I.    Plaintiff's complaint

Plaintiff's original complaint named five defendants: Berrien County Sheriff L. Paul Bailey; Deputy Stacey Ward; Deputy Corey Burks; Deputy Mata; and Berrien County, Michigan. *See* Compl. (docket no. 1, PageID.1-7). Plaintiff sought compensatory and punitive damages of at least $500,000.00 against Berrien County and the four individual defendants in their personal capacity. *Id.* at ¶ VI.

---

[1] Defendants refer to the dispositive motion as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "and/or" motion for summary judgment pursuant to Fed. R. Civ. P. 56(a). This motion, which relies on over 350 pages of exhibits which are not part of the pleadings, is in essence one for summary judgment and will be treated as such.

### A. Allegations in the original complaint

Plaintiff set forth the following allegations in his complaint. He is a prisoner in the custody of the Michigan Department of Corrections (MDOC), who was housed at the Berrien County Jail for a period of time in 2008. *Id.* at ¶¶ V and VI. On or about March 29, 2008, he was physically assaulted by other inmates when he was handcuffed and then placed in a holding cell at the jail with four other inmates who were not in restraints while a shakedown of his cell was conducted. *Id.* at ¶ V. The other inmates beat plaintiff in the face and kicked him in the stomach. *Id.* Before being placed in the cell, plaintiff had "verbally informed" the deputy on duty, Stacey Ward, of the substantial risk of being assaulted by inmates Hurd and Bennett, and two other inmates whose names were unknown to him. *Id.* Deputy Ward called plaintiff a coward and disregarded the risk. *Id.*

The next day, plaintiff alleged that he filed a grievance with Sheriff Bailey regarding Deputy Ward's failure to protect him from other inmates. *Id.* Plaintiff also alleged that he filed three grievances between April 1, 2008 and April 13, 2008, with Sheriff Bailey and non-party David Cochran, the Berrien County Jail Administrator. *Id.* Plaintiff also made "oral complaints" to defendant Burks regarding the attack and his fear of another attack by jail inmates. *Id.* According to plaintiff, because he was designated by the MDOC as a "high security risk" prisoner, he requested to be segregated from the other inmates when deputies removed inmates for cell searches. *Id.*

Plaintiff alleged that he was assaulted a second time on June 1, 2008, while he was confined to a holding cell in handcuffs with four other inmates. *Id.* Plaintiff suffered "a bloody lip, bloody front tooth, and extreme swelling and pain to his right knee as a result of the assault." *Id.* Prior to the assault, plaintiff informed defendant Deputy Mata of the risk of physical harm if he was locked up with inmate Wynn, who had made serious threats to plaintiff a few hours before assault.

2

*Id.* Deputy Mata did not take reasonable steps to protect plaintiff from inmate Wynn. *Id.* That same day, plaintiff asked Deputy Mata for immediate medical attention for his injuries suffered in the assault. *Id.* However, plaintiff did not receive any medical care until 2 1/2 weeks after the assault. *Id.* Due to this delay in treatment, "plaintiff['s] wound became infected and developed into a permanent scar, his front tooth was fractured, and plaintiff's right knee made popping noises whenever he walked or exercised." *Id.* Plaintiff alleged that Berrien County Jail's medical staff showed deliberate indifference to him. *Id.*

Plaintiff alleged that he filed a grievance regarding the assault the next day (June 2, 2008), advising both Deputy Burks and Sheriff Bailey of the second assault. However, neither Deputy Burks nor Sheriff Bailey took steps to correct the problem of placing handcuffed inmates in holding cells with other inmates. *Id.*

Finally, plaintiff alleged that Berrien County (the "County") had two policies which violated his rights. First, the County had a policy of providing inadequate medical treatment to prisoners. *Id.* Second, the County had "a policy of handcuffing 'high risk prisoners' and disregarding the risk that they could be physically assaulted by other prisoners as they are not separated and segregated from prisoners who are not in restraints." *Id.*

### B. Plaintiff's attachments to the complaint

Plaintiff attached a number of handwritten documents which he referred to as "grievance forms" to his complaint. Plaintiff designated these as Exhibits A through F. *See* Grievances (docket nos. 1-2, 1-3, 1-4, 1-5, 1-6 and 1-7). The first grievance, undated and addressed to Sheriff Bailey, stated that "[a]round March 29, 2008 at 7:00 p.m." he was assaulted by Gregory Hurd, Corey Bennett, and two other inmates of the county jail. *See* Grievance (docket no. 1-2).

3

Plaintiff stated that "Deputy Ward did nothing to prevent this assault from happening as I warned her beforehand." *Id.*

In a handwritten grievance directed to the sheriff, dated April 7, 2008, plaintiff stated that the sheriff did not respond to his March 29, 2008 grievance with respect to the inmate assault which occurred on that date. *See* Grievance (docket no. 1-3).

In a handwritten grievance dated April 13, 2008, addressed to the "Undersheriff," plaintiff stated that "there are no true grievance forms to file" and advised the undersheriff that he could state grievances on blank pieces of paper. *See* Grievance (docket no. 1-4).

In a handwritten grievance dated April 12, 2008, addressed to David Cochran, plaintiff referred to the March 29, 2008 assault and asking to be moved. *See* Grievance (docket no. 1-5).

In an undated handwritten document entitled "Grievance of second assault" addressed to Sheriff Bailey, plaintiff stated that on June 1, 2008, while handcuffed, he was physically assaulted by inmate Wynn White when deputies performed a shakedown of his cell. *See* Grievance (docket no. 1-6). Plaintiff stated that he told Deputy Mata that there was a problem between plaintiff and White, and that he should not be placed in a cell with him. *Id.* Deputy Mata "smiled and told me that I shouldn't be running my mouth so much." *Id.*

In another handwritten grievance addressed to former defendant Burks, dated June 8, 2008, plaintiff stated that Deputy Mata was aware of plaintiff's problem with Wynn, but Mata told him to stop running his mouth and deliberately failed to protect him. *See* Grievance (docket no. 1-7).

### C. Amended complaint

After defendants presented evidence that there was no shakedown of plaintiff's cell as alleged on March 29, 2008, plaintiff filed an amended complaint which re-alleged all of his claims, but changed the date of the first assault from March 29, 2008 to March 30, 2008. *See* Amend. Compl. (docket no. 144).

### III. Procedural background

On June 22, 2011, the Court issued a Report and Recommendation (R&R) addressing defendants' first motion for summary judgment. *See* R&R (docket no. 143). In addressing the motion, the Court noted that defendants had presented evidence that there was no shakedown of plaintiff's cell on March 29, 2008 and the absence of any medical record from that date. *Id.* at PageID.439.[2] While the R&R was pending, plaintiff filed an amended complaint changing the date of the first alleged assault from March 29, 2008 to March 30, 2008. *See* Amend. Compl. at PageID.451-55. The new date is inconsistent with the grievances attached to the original complaint, which placed the date of the assault as March 29, 2008. *See* Grievances (docket nos. 1-2, 1-3 and 1-5).

The Court adopted the R&R and dismissed defendants Sheriff Bailey and Sergeant Burks, as well as plaintiff's Eighth Amendment claims for deliberate indifference to a serious medical need alleged against Berrien County. *See* Order adopting and approving R&R (docket no.

---

[2] The Court notes that while no there was no shakedown on March 29, 2008 (as alleged in the original complaint and recited in the purported grievances), plaintiff was disciplined for two incidents on that date. First, plaintiff was issued a minor infraction and given a three day lockdown for sending a nurse a letter detailing his desire to enter into a physical relationship with her. *See* Loss of Privileges (docket no. 334-1, PageID.1800). Second, plaintiff was given an infraction for calling defendant Ward a "dumb bitch" and threatening her. *See* Loss of Privileges (docket no. 334-1, PageID.1797).

5

155).  The claims remaining in this action are plaintiff's Eighth Amendment claims that (1) Deputy Mata was deliberately indifferent to his serious medical needs following the June 1, 2008 assault; and (2) that defendants Deputy Mata, Deputy Ward and Berrien County failed to protect plaintiff from being attacked by other inmates at the Jail.

Plaintiff was appointed pro bono counsel on January 3, 2012 and a case management order entered.  *See* Order (docket no. 161); Case Management Order (docket no. 166).  On December 12, 2012, the Court suspended all deadlines in this case.  *See* Order (docket no. 222).  Then, on January 18, 2013, the Court granting counsel's motion to withdraw, finding that while plaintiff stated that he was dissatisfied with counsel's work, counsel had good reasons to withdraw having "satisfied the Court that ethical considerations detailed on the Ex Parte record would require withdrawal of representation in any event."  *See* Order (docket no. 235).  Counsel's withdrawal was particularly significant in this case, because plaintiff had a history of abusing information which he obtained in his status as a party in this litigation and counsel had possession of records which were the subject of a protective order.  *See* Protective Order (docket no. 170) (under which plaintiff's counsel would be responsible for sensitive documents); Order (docket no. 257) (in denying plaintiff's motion for appointment of new counsel, the Court observed that "recent proceedings in the case provide good reason not to appoint counsel for plaintiff"); Order (docket no. 291) (Court found that plaintiff's harassment of a female attorney representing defendants amounted to an abuse of process, ordered plaintiff to direct all communications to defendants' lead counsel, and advised plaintiff that if he failed to follow this order, this action would be subject to dismissal pursuant to W.D. Mich. LCivR 41.1 or such other orders of discipline and/or contempt that the court determined

appropriate); Order (docket no. 320) (amending protective order to be consistent with a *pro se* prisoner litigant).

Because plaintiff's former counsel's file contained documents which plaintiff could not possess either under the terms of the protective order or under MDOC policies, all documents obtained from defendants in discovery and held by plaintiff's former counsel were deposited with the Court. *See* Order (docket no. 320) (directing that plaintiff's former counsel shall deliver the following documents to the Court: "(1) all documents which were produced in discovery by defendants; (2) all correspondence, including attachments (if any) by which former counsel transmitted copies of discovery documents to plaintiff; (3) all interrogatory responses provided by defendants to former counsel; and (4) all deposition transcripts obtained by former counsel").

The Court set a deadline for the completion of discovery of April 30, 2013, and a dispositive motion cut off date of May 31, 2013. *See* Order (docket no. 235). Defendants filed a timely motion for summary judgment, which is now before the Court. Plaintiff did not file a response to the motion as required by W.D. Mich. LCivR 7.2(c) ("Any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion").[3] Nor did plaintiff file an affidavit or declaration for relief pursuant to Fed. R. Civ. P. 56(d) stating specific reasons why he could not present facts essential to justify his opposition to the motion for summary judgment. Despite the fact that discovery was closed, plaintiff filed motions seeking, among other things, the production of his complete MDOC medical file and custodial record and unredacted copies of

---

[3] The Court notes that plaintiff is well-aware of how to engage in motion practice in this district, having filed 13 *pro se* civil rights actions in this district since 2008. The docket sheet reflects that plaintiff has filed 53 *pro se* motions in this case alone. *See* docket nos. 2, 3, 13, 19, 25, 31, 33, 36, 38, 46, 47, 48, 51, 63, 64, 67, 70, 80, 89, 90, 92, 94, 96, 116, 122, 131, 133, 147, 156, 174, 181, 185, 189, 192, 193, 247, 250, 254, 256, 258, 260, 267, 270, 271, 272, 273, 294, 296, 313, 326, 327, 345 and 347.

transcripts attached to defendants' motion (i.e., transcripts containing personal and confidential information unrelated to his claims). The Court denied plaintiff's motions. *See* Order (docket no. 356).

In addition, plaintiff wanted the MDOC to return legal materials which he claimed were confiscated. These confiscated materials were apparently sent to plaintiff by his former counsel, and included personal information on state employees, maps of Michigan and copies of sexually explicit letters that plaintiff had been writing to those employees. *Id.* at PageID.2203-2204. MDOC personnel stated that they returned all material to plaintiff which was not related to an investigation involving plaintiff at the MDOC. *Id.* Although plaintiff did not file a response to the motion for summary judgment, the Court stayed this case so that he could obtain copies of these litigation documents which were allegedly taken by MDOC personnel. *See* Order to stay proceedings (docket no. 357).

Because of plaintiff's history of abusing judicial process, the Court's order required that plaintiff provide a declaration under penalty of perjury furnishing a detailed explanation of which legal documents related to this litigation were confiscated by the MDOC, which legal documents related to this litigation were destroyed, and which legal documents related to this litigation were in plaintiff's possession. *See* Order at PageID.2204-2205. Upon receipt of an appropriate declaration, the Court would send plaintiff copies of legal documents which his counsel had provided to him but which plaintiff no longer had in his possession, excluding documents which contained the personal identifiers of any individual, including "lists of names, lists of addresses, and copies of maps delivered to plaintiff by his previous counsel." *Id.* Plaintiff never provided a declaration to support his claim that the MDOC confiscated his litigation materials. Accordingly,

8

on May 21, 2015, the Court entered an order lifting the stay, and advised the parties that it would address defendants' dispositive motion based on the existing record. *See* Order denying plaintiff's motion to produce and lifting stay (docket no. 359).

## II. Summary judgment standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants seek summary judgment on plaintiff's claims. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

9

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

**III.   Discussion**

**A.    Exhaustion**

Defendants seek summary judgment for lack of exhaustion. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions

under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### B. Exhaustion is an affirmative defense

As an initial matter, defendants incorrectly state that plaintiff failed to meet his burden of proof on the issue of exhaustion because he failed to attach copies of the grievances to his complaint. Defendants' Brief (docket no. 334, PageID.1753-1754). Plaintiff is not required to attach copies of the grievances to his complaint. *See Jones*, 549 U.S. at 216 (failure to exhaust is an affirmative defense under the PLRA that inmates are not required to specially plead or demonstrate exhaustion their complaints).

### C. Berrien County's grievance process

The Berrien County Jail ("Jail") had a procedure in place regarding grievances during plaintiff's incarcerationset forth in the Jail's Inmate Rules and Regulations ("IR&R"), which states in pertinent part:

**12. PERSONAL PROBLEMS**

> You may discuss your problems with a deputy or with the jail chaplain. Any other questions or problems may be addressed by writing the shift commander, who will assign a deputy to investigate your complaint or question.
>
> **Grievances**: Special complaints regarding deputies actions or grievances regarding disciplinary actions can be addressed by writing the jail operations lieutenant, jail administrator, undersheriff or sheriff. Action will be taken depending on the situation and circumstances of the grievance.

IR&R (docket no. 334-3, PageID.1922).

Under the procedure at the Jail, inmate "grievances", i.e., the "physical documents that the inmates might give the deputies" are reviewed by the person to whom they are addressed and then placed in the inmate's file. If a deputy could not respond to the grievance, it would be forwarded to the Jail's Operations Lieutenant. Capt. David Cochran Dep. (docket no. 334-4, PageID.1921-1933); Sheriff Bailey Dep. (docket no. 334-5, PageID.1943-1944); Ward Dep. (docket no. 334-6, PageID.1974). Defendants have submitted copies of plaintiff's inmate file, which reflects that plaintiff was at the Jail from March 13, 2008 through July 3, 2008, and filed numerous grievances during that time period. *See* Booking/Release (docket no. 334-1, PageID.1776); Inmate Record (docket no. 334-1, PageID.1776-1845; docket no. 334-2, PageID.1847-1918).

### D. The grievances attached to plaintiff's complaint

Although plaintiff's original complaint is a nullity,[4] the Court will consider the grievances attached to it which plaintiff presented to demonstrate exhaustion of his claims. As an initial matter, the grievances attached to plaintiff's complaint which refer to an assault occurring on March 29, 2008 are irrelevant to this action, which alleged an assault occurring on March 30, 2008. In addition, none of the "grievances" attached to plaintiff's complaint as Exhibits A through F (docket nos. 1-2, 1-3,1-4, 1-5, 1-6 and 1-7) appear in his inmate file. *See id.* Furthermore, defendant Ward explained that these exhibits were not on the paper provided by the Jail:

> But the other thing is, this [Exhibits A through F] is all done like on white paper, and we don't have just plain white paper in the jail. It would be state paper with lines.

Ward Dep. at PageID.1974.

Defendants have presented evidence that the six grievances attached to plaintiff's complaint were not received by the Jail (i.e., not in his inmate file) and not written on the paper used by the Jail for such purposes. Based on this record, there is no evidence that the six grievances attached to plaintiff's complaint were properly exhausted under the IR&R. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91.

### E. The alleged assault of March 30, 2008

Plaintiff's inmate file does not include any grievances related to an alleged assault which occurred on March 30, 2008. *See* Inmate Record at PageID.1776-1845 and 1847-1918. However, the inmate file contains seven grievances and a letter to the chaplain dated March 30,

---

[4] "It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir.2000). *See B & H Medical, L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 n. 8 (6th Cir.2008) (an amended complaint supercedes all previously filed complaints).

2008: (1) grievance claiming that he was denied time to shower and use the phone (docket no. 334-2, PageID.1856); (2) grievance claiming that former defendant Burks has been harassing him since March 14, 2008 (*Id.* at PageID.1857); (3) grievance claiming that Burks placed plaintiff on administrative lockdown since March 20, 2008 and denied him access to religious services, psychological services, a mattress, sheets, blanket and sprinkler head, and improperly designated plaintiff as a high assaultive and escape risk (*Id.* at PageID.1858); (4) a three-page letter to the chaplain explaining that he has been living with a guilty conscience since 1996, when he murdered rapper Tupac Shakur in Las Vegas (*Id.* at PageID.1859-1861); (5) a letter to the Jail's medical personnel that he is pursuing a complaint against "Nurse Carrie" for giving him the wrong medication, that he wants a different nurse to provide him with medication, that he needs more than one pill of Dulcolax each day, and that he needs prescription medication for his enlarged prostate (*Id.* at PageID.1862-1863); (6) grievance claiming that after his March 17, 2008 arraignment in Berrien County, "it was agreed" that he would be transported back to his correctional facility in Ionia until his preliminary examination, that the Jail has denied him psychotropic medication prescribed by his prison psychiatrist, that he has been discriminated against due to his status as a state prisoner, that he is handcuffed wherever he goes, that he has been denied medical treatment due to his "high security" status, that he is being served small portions of food on small paper plates unlike the county inmates who get a "plastic full-size tray", that he is not allowed to participate in religious services, that he has not had a shower for six days, that the jail does not have a sufficient law library, and that his cell does not have a sprinkler system (*Id.* at PageID.1865-1866); (7) grievance claiming that the Jail's psychiatrist has been refusing to evaluate him and re-prescribe his medications (*Id.* at PageID.1879-1880); and, (8) grievance stating that "to avoid conflicts and confusion" plaintiff

should be sent back to his correctional facility in Ionia until his preliminary examination (*Id.* at PageID.1881).

The document in plaintiff's inmate file which involved both an incident occurring on March 30, 2008 and a defendant in this action was a post-script added to an unrelated grievance which referred to defendant Mata's shakedown of his cell:

> P.S. On 3/30/08 second shift deputy Mata performed a shakedown of my cell and deliberately confiscated my sheet, claiming I had tore it. The sheet that was provided to my by trustees that same day had a rip in it. Deputy Mata purposely took my sheet to get a reaction from me and out of aggravation. I would appreciate a bed sheet as I am entitled to one just like the other inmates. I did not tear this sheet at all!

*Id.* at PageID.1866). While this post-script was added to a grievance after the March 30, 2008 shakedown, nothing in that grievance addressed plaintiff's claim that other prisoners assaulted him on that date. Rather, this grievance is consistent with defendant Mata's report that on March 30, 2008, while completing a shakedown of plaintiff's cell, he found that plaintiff was in possession of two sheets torn along the seams and that given the condition of plaintiff's sheets, Mata recommended that plaintiff be given only one blanket and that he not be given a sheet unless approved by Command Staff. *See* Loss of Privileges (docket no. 334-1, PageID.1799). In summary, there is no evidence that plaintiff properly exhausted any grievance with respect to an alleged assault which occurred on March 30, 2008. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's claims related to this alleged assault.

### F. The alleged assault of June 1, 2008

Plaintiff's inmate file does not contain any grievances filed with respect to an alleged assault which occurred on June 1, 2008 or which claim that defendant Mata was deliberately

indifferent to plaintiff's serious medical needs on that date. *See* Inmate Record at PageID.1776-1845 and 1847-1918. Furthermore, plaintiff could not have filed a grievance against defendant Mata for failing to provide him with medical treatment on June 1, 2008, because Mata did not work at the Jail on that day. *See* Juan Mata Dep. (docket no. 334-20, PageID.2099 and 2103). In this regard, while plaintiff alleged that he was denied medical treatment for 2 1/2 weeks after the alleged assault on June 1, 2008, plaintiff's medical record reflects that he was treated at the Jail on June 12, 2008. *See* Medical Record (docket no. 334-2, PageID.1871 and 1908). At that time, 11 days after the alleged assault, plaintiff was treated for eczema and prescribed a cream. *Id.* The medical records do not reflect that plaintiff was suffering from infected wounds, a fractured front tooth or injuries to his right knee. *Id.* Based on this record, there is no evidence that plaintiff properly exhausted any grievances to support his claims arising from the alleged June 1, 2008 assault or defendant Mata's failure to provide him with medical treatment. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants are entitled to summary judgment on those claims.[5]

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 333) be **GRANTED** and that this action be **DISMISSED**.

Dated: December 3, 2015            /s/ Ray Kent
                                   RAY KENT
                                   United States Magistrate Judge

---

[5] Because defendants have demonstrated that plaintiff did not exhaust his administrative remedies, the undersigned has not addressed defendants' motion with respect to the merits of plaintiff's claims.

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).